UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MOUSSA MASHOUD,

                                              Petitioner,

    vs.                                                              5:25-CV-289
                                                                       (MAD/DJS)

USCIS: UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES, and SARAH FRENCH,
*USCIS Syracuse Field Office*,

                                              Respondents.

---

APPEARANCES:                                      OF COUNSEL:

MOUSSA MASHOUD
Oswego, New York
Plaintiff, *pro se*

OFFICE OF THE UNITED                              KAREN F. LESPERANCE, AUSA
STATES ATTORNEY
James T. Foley U.S. Courthouse
445 Broadway, Room 218
Albany, New York 12207
Attorney for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On March 5, 2025, Petitioner Moussa Mashoud filed a complaint, *pro se*, against

Respondents United States Citizenship and Immigration Services ("USCIS") and Sara French, the

Director of the USCIS Syracuse Field Office (collectively, "USCIS" or "Respondent"), seeking

this Court's review of USCIS's decision to deny Petitioner's application for naturalization pursuant

1

to two provisions of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1421 and 1447(e), and the Administrative Procedures Act ("APA"), 5 U.S.C. § 702. *See* Dkt. No. 1.

Presently before the Court is Respondent's motion to dismiss Plaintiff's complaint for lack of subject matter jurisdiction and failure to state a claim. *See* Dkt. No. 22. Respondent argues that "[a]s to Section 1421, petitioner cannot meet his statutory burden as a matter of law. As to 5 U.S.C. § 702, that remedy is unavailable where another statutory remedy exists. Petitioner's Section 1447(e) cause of action fails because USCIS acted on his application and denied it." Dkt. No. 22-3 at 7.[1] Petitioner opposes the motion and asks for leave to amend his complaint. *See* Dkt. No. 31. Respondent replied in further support of its motion. *See* Dkt. No. 32.

On August 27, 2025, Petition requested a Clerk's entry of default against Respondent. *See* Dkt. No. 36. The Clerk's Office denied the request. *See* Dkt. No. 37. On February 4, 2026, Petitioner filed a motion for default judgment. *See* Dkt. No. 49. He also filed a second request for entry of default. *See* Dkt. No. 51. The Clerk's Office again denied Petitioner's request for default stating as follows: "Request for Entry of Default CANNOT be honored for the following reason: Pursuant to Rule 12, Defendant Sarah French filed 22 Motion to Dismiss in lieu of filing an Answer. Therefore, Defendant Sarah French is not in default." Dkt. No. 52.

For the following reasons, Respondent's motion to dismiss is granted, Petitioner's complaint is dismissed, and Petitioner's motions to amend and for default judgment are denied.

## II. BACKGROUND

Petitioner alleges USCIS improperly denied his application for naturalization on December 18, 2024, and his request for a hearing on February 25, 2025. *See* Dkt. No. 1 at 2 at ¶ 4. He explains that USCIS denied his application because he "failed to submit an original or

---

[1] The Court cites to the pagination generated by CM/ECF in the header of each page.

certified copy of the full arrest record from the incident on July 18, 2018[,]" and he could not "establish [good moral character] if he or she was imprisonment for an aggregate of 180 days or more during the statutory period based on the conviction." *Id.* Petitioner attached the two USCIS decisions he presently challenges as exhibits to his complaint. *See* Dkt. No. 1-1.

The December 18, 2024, decision states that Petitioner obtained permanent resident status on October 12, 2011, through his spouse. *See id.* at 2. He applied, via Form N-400, for naturalization on November 4, 2023, and he was interviewed by USCIS on October 31, 2024. *See id.* USCIS concluded Petitioner was "ineligible for naturalization because of an unlawful act you committed." *Id.* It noted that "to be eligible for naturalization, you must demonstrate that you are a person of good moral character. We find that the unlawful act you committed on July 18, 2018[,] and were imprisoned for during the statutory period adversely reflects upon your moral character." *Id.*

USCIS explained as follows:

> On July 18, 2018, you were arrested in the State of New York on the following charges: Criminal Possession of a Weapon 2d Degree: Loaded Firearm (PL 265.03); Criminal Possession of a Weapon 3d Degree (PL 265.02); Criminal Possession of a Weapon 4th Degree: Armor Piercing Ammunition Queens County, following your guilty plea to 2 counts of Criminal Possession of a Weapon in the 4th Degree (PL 265.01).

*Id.* It also stated that Petitioner was "subsequently sentenced to 364 days imprisonment on each charge. During your interview on October 31, 2024, you testified that during the statutory period you were incarcerated for an unknown amount of time in 2020 for this arrest." *Id.* In the decision, USCIS concluded Petitioner had "not established that [he was] a person of good moral character because of his unlawful act and [he had] not established any extenuating circumstances that would warrant a departure from this finding." *Id.*

3

USCIS asserted it was also "denying [Petitioner's] application due to an insufficient response to evidence requested from you." *Id.* USCIS requested "an original or certified copy of the full police report and final court disposition showing how the incident on July 18, 2018[,] was resolved. This evidence was due to USCIS no later than December 30, 2024." *Id.* USCIS stated that Petitioner responded on December 2, 2024, with "a court disposition of the arrest dated June 14, 2022[,] and a payment receipt for a total of $250 in fines related to the arrest, both issued by the Supreme Court of the State of New York, Queens County." *Id.* USCIS determined Petitioner "failed to submit an original or certified copy of the full arrest record from the incident on July 18, 2018." *Id.* USCIS concluded Petitioner had "not submitted sufficient evidence to show that [he] met] the good moral character requirement. For this reason, [he had] not established that [he is] eligible for naturalization." *Id.*

Two days later, on December 20, 2024, Petitioner filed a Form N-336 for a hearing on the decision. *See id.* at 4. Petitioner appeared for the hearing on February 21, 2025. *See id.* On February 25, 2025, USCIS affirmed its previous denial of Petitioner's application. *See id.* at 4-5. USCIS reiterated its statements that Petitioner failed to provide sufficient evidence in response to the RFE. *See id.* at 4. It also stated as follows:

> [F]ollowing your July 18, 2018, [arrest] you were held in confinement for 2 years and 28 days. Related to this arrest and confinement, you were convicted on 2 counts of Criminal Possession of a Weapon in the 4th Degree (PL 265.10.01). Each charge carried a confinement of 364 days. The period of you[r] confinement lasted until approximately August 15, 2020. You filed your Form N-400 on November 04, 2023, thus your confinement falls into the statutory period, which began 5 years prior to the date of filing.

*Id.* at 4-5. USCIS explained that applicants for naturalization are unable to establish good moral character "if he or she is or was imprisoned for an aggregate of 180 days or more during the

4

statutory period based on the conviction.  The bar to [good moral character] applies regardless of the reason for the conviction or when the conviction occurred, as long as the confinement occurred during the statutory period." *Id.* at 5.  Both decisions are signed by Defendant French. *See id.* at 3, 5.[2]

Petitioner states in his response to the motion to dismiss that he was not incarcerated for more than 180 days "based on a conviction" because he was incarcerated between July 18, 2018, and August 15, 2020, which was before he was convicted on April 26, 2022.  Dkt. No. 31 at 6. Petitioner contends he "was given the option to leave the pretrial detention of the state if he wished to do so, and $10[,]000 bond Bail was available to him, but defendant preferred to enter into [] protective custody with the state, as at the time of his arrest [Petitioner]'s life was in danger, and [Petitioner] did not feel safe bailing himself at that time[.]" *Id.*  Petitioner states that, on August 15, 2020, he was not released from incarceration because of "completing a sentence or a conviction for a crime, but" because he "bailed himself out[.]" *Id.* at 7.  He notes that after he paid bail and was released, he "went to court every week for a total of 2 years from 2020 to 2022, which gave him a favorable outcome of the deal with the people, [Petitioner] was given [] time served." *Id.*  Petitioner explains that he "show[ed] good moral character for 4 years post arrest . . .

---

[2] USCIS provided the Court with a copy of the certified administrative record with its motion to dismiss.  *See* Dkt. No. 22-2.  However, it is unnecessary to rely on any information outside Petitioner's complaint and the USCIS decisions attached thereto.  To be sure, part of the administrative record includes the documents Petitioner submitted to USCIS related to his state court conviction.  Petitioner provided USCIS with a copy of a "Certificate of Disposition Indictment" which is signed by the Queens County Court Clerk and indicates that on April 26, 2022, Petitioner was convicted of two counts of criminal possession of a weapon in the fourth degree in violation of New York Penal Law § 265.01(1), an A Class Misdemeanor and was sentenced to 364 days' imprisonment on each count.  *See id.* at 68.  However, the Court need not address the propriety of USCIS's determination that Petitioner failed to submit sufficient evidence because his application must be denied for the inability to establish the good moral character requirement.  The Court has been able to make that determination with only the evidence submitted by Plaintiff with his complaint and the arguments of the parties.

never missed court, never got into trouble, and has not been in trouble since his arrest in 2018[.]"
*Id.*

### III. DISCUSSION

USCIS raises three grounds in support of its motion to dismiss: (1) Petitioner failed to establish good moral character under 8 U.S.C. § 1421 because of his conviction and incarceration; (2) Petitioner cannot bring a claim under the APA; and (3) the claim brought pursuant to 8 U.S.C. § 1447(e) must be dismissed because USCIS acted on Petitioner's application. *See* Dkt. No. 22-3 at 7. Respondent is correct on all three grounds.

### A.    Standard of Review

"A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Dutrow v. New York State Gaming Commission*, No. 13-CV-996, 2014 WL 11370355, *3 (E.D.N.Y. July 29, 2014), *aff'd*, 607 Fed. Appx. 56 (2d Cir. 2015). "[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit ([i.e.,] subject-matter jurisdiction)." *Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (citation omitted). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

When subject matter jurisdiction is challenged, a plaintiff "bear[s] the burden of 'showing by a preponderance of the evidence that subject matter jurisdiction exists.'" *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (quoting *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003)). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a

district court may consider evidence outside the pleadings*." Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citing Makarova, 201 F.3d at 113).

In reviewing a motion to dismiss under Rule 12(b)(1), the court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). The court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [ ] may not rely on conclusory or hearsay statements contained in the affidavits." *Id.* In resolving a Rule 12(b)(1) motion, a court may also "consider 'matters of which judicial notice may be taken.'" *Greenblatt v. Gluck*, No. 03-CV-597, 2003 WL 1344953, *1 n.1 (S.D.N.Y. Mar. 19, 2003) (quoting *Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir. 1993)).

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," FED. R. CIV. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

## B.   Respondent's Motion to Dismiss Based on Lack of Subject Matter Jurisdiction

### 1. Administrative Procedures Act

Petitioner alleges in his complaint that the APA gives this Court the power to review an administrative agency's actions and determination. *See* Dkt. No. 1 at 5. Respondent does not disagree, as a general matter, but argues that because the INA provides a procedural mechanism for this Court to review USCIS's decision, the APA is inapplicable. *See* Dkt. No. 22-3 at 11-12.

"The APA generally provides a waiver of the United States' sovereign immunity for suits seeking relief other than monetary damages brought by '[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute.'" *De Dandrade v. United States Dep't of Homeland Sec.*, 367 F. Supp. 3d 174,

187 (S.D.N.Y. 2019), *aff'd sub nom. Moya v. United States Dep't of Homeland Sec.*, 975 F.3d 120 (2d Cir. 2020) (quoting 5 U.S.C. § 702); *see also Bowen v. Massachusetts*, 487 U.S. 879, 891-92 (1988). "'There are . . . many threshold limitations to judicial review under the APA.'" *Id.* (quoting *Sharkey v. Quarantillo*, 541 F.3d 75, 84 (2d Cir. 2008)). "The APA only provides for judicial review of actions that are reviewable by statute or any 'final agency action for which there is no other adequate remedy in a court.'" *Id.* (quoting 5 U.S.C. § 704).

Petitioner cannot bring a claim under the APA because the relief he seeks—"judicial review [of] the findings and decision" of USCIS—is available under § 1421(c) of the INA. Dkt. No. 1 at 7. "Courts have recognized that § 1421(c) is the 'sole means of seeking judicial review of the actual denial of naturalization application.'" *Rahman v. Garland*, 791 F. Supp. 3d 357, 367 (E.D.N.Y. 2025) (quoting *Kaibanda v. U.S. Citizenship & Immigr. Serv.*, 2022 WL 2195345, *8 n.8 (S.D.N.Y. June 17, 2022)); *see De Dandrade*, 367 F. Supp. 3d at 187 ("All relief that individual plaintiffs seek may be granted under section 1421(c)); *see also Alfar v. Gray*, No. 22-CV-10260, 2024 WL 4653000, *6 (S.D.N.Y. Oct. 31, 2024) (citing *Li v. Garland*, No. 21-CV-10601, 2022 WL 17095250, *14 (S.D.N.Y. Nov. 21, 2022)); *Miriyeva v. U.S. Citizenship & Immigr. Serv.*, 436 F. Supp. 3d 170, 178 n.11 (D.D.C. 2019), *aff'd*, 9 F.4th 935 (D.C. Cir. 2021).

Accordingly, because there are alternative means for this Court to review Petitioner's claim, the Court lacks subject matter jurisdiction to consider his APA claim. Respondent's motion is granted on this issue.

### 2. 8 U.S.C. § 1447(e)

Petitioner brings a claim pursuant to § 1447(e) of the INA for "a de novo hearing in this court for a name change requested on the N 400 naturalization application that was denied by the

9

respondent on December 18, 2024[,] or during the N 336 request for hearing interview which was also denied by responded on February 25, 2025." Dkt. No. 1 at 6, ¶ 12.

Respondent argues the § 1447 claim must be dismissed for lack of subject matter jurisdiction because "[t]he district court's jurisdiction under Section 1447(b) vests with a naturalization applicant's petition for a hearing in *the absence of a timely decision* by USCIS," but USCIS acted on Petitioner's application. Dkt. No. 22-3 at 12 (emphasis added). Respondent also contends that § 1447(e) concerning name changes is inapplicable where a naturalization application has been denied. *Id.* at 13 n.6.

"Section 1447(a) provides an applicant whose application was denied under § 1447(b) with the opportunity to request a hearing before an immigration officer—an administrative appeal." *Iqbal v. Sec'y U.S. Dep't of Homeland Sec.*, 190 F. Supp. 3d 322, 329 (W.D.N.Y. 2016) (citing 8 U.S.C. 1447(a)). "USCIS must schedule the § 1447(a) review hearing 'within a reasonable period of time not to exceed 180 days from the date upon which the appeal is filed.'" *Id.* (quoting 8 C.F.R. § 336.2(b)). "The district court's jurisdiction under Section 1447(b) vests with a naturalization applicant's petition for a hearing in the absence of a timely decision by USCIS." *Bustamante v. Napolitano*, 582 F.3d 403, 406 (2d Cir. 2009). "USCIS also retains jurisdiction beyond the 120-day period following the initial examination as long as a naturalization applicant does not file a Section 1447(b) petition." *Id.* (citing 8 U.S.C. § 1447(b)). "When a petitioner's case does not fall into the exceptions carved out by . . . § 1447(b), the Court lacks adjudicatory authority." *Donnelly v. Controlled Application Rev. & Resol. Program Unit*, 503 F. Supp. 3d 100, 105 (S.D.N.Y. 2020), *aff'd but criticized*, 37 F.4th 44 (2d Cir. 2022).

"If . . . the USCIS denied a naturalization application before the filing of a complaint under § 1447(b) in federal district court, 'a live controversy concerning the determination of the

application—the subject matter of Section 1447—d[oes] not exist and the claim [i]s moot.'" *Rizk v. Mayorkas*, No. 22-CV-5692, 2024 WL 2860230, *7 (D.N.J. June 6, 2024) (quoting *Assem Abulkhair v. Bush*, 413 Fed. Appx. 502, 505, n.1 (3d Cir. 2011)); *see also Usoh v. U.S.C.I.S.*, No. 2:22-CV-1470, 2023 WL 4634955, *3 (D.S.C. July 20, 2023), *aff'd as modified sub nom. Usoh v. United States Citizenship & Immigr. Servs.*, 2024 WL 3842106 (4th Cir. Aug. 16, 2024) ("As noted by the magistrate judge, the USCIS has resolved Petitioner's N-400 application. Thus, 8 U.S.C. § 1447(b) does not apply"); *Pena Grullon v. Barr*, No. 3:20-CV-0312, 2021 WL 743296, *5 (M.D. Pa. Feb. 25, 2021) ("It is undisputed that [the petitioner's] N-400 application had been fully adjudicated prior to the initiation of this action. The plain language of 1447(b) applies to unadjudicated applications").

Because Petitioner did not file his complaint in this Court until after USCIS denied his application, the Court lacks jurisdiction to hear his claim under § 1447(b). Insofar as Petitioner cited § 1447(e) in this complaint, the Court agrees with Respondent that such a claim concerns the changing of an applicant's name when their application has been granted. *See* 8 U.S.C. § 1447(e) ("It shall be lawful *at the time and as a part of the administration by a court of the oath of allegiance* under section 1448(a) of this title for the court . . . to make a decree changing the name of said person, and the certificate of naturalization shall be issued in accordance therewith"). Because USCIS denied Petitioner's application, § 1447(e) in inapplicable.

**C.    De Novo Review of Naturalization Application Pursuant to 8 U.S.C. § 1421(c)**

"Congress has provided an avenue for seeking naturalization in federal court after an unsuccessful administrative appeal of an initial denial." *Donnelly v. Controlled Application Rev. & Resol. Program Unit*, 37 F.4th 44, 48 (2d Cir. 2022). The INA provides as follows:

> [a] person whose application for naturalization under this
> subchapter is denied, after a hearing before an immigration officer
> under [8 U.S.C. § 1447(a)], may seek review of such denial before
> the United States district court for the district in which such person
> resides in accordance with chapter 7 of title 5.

8 U.S.C. § 1421(c).  "When its conditions are met, § 1421(c) 'offers an expansive form of judicial review.'"  *Donnelly*, 37 F.4th at 48 (quoting *Moya v. DHS*, 975 F.3d 120, 127 (2d Cir. 2020)).  "According to its terms, '[s]uch review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.'"  *Id.* (quoting 8 U.S.C. § 1421(c)).

"As the Second Circuit has described, 'this grant of authority is unusual in its scope—rarely does a district court review an agency decision de novo and make its own findings of fact.'"  *Saleh v. Jaddou*, No. 21-CV-10240, 2023 WL 5671149, *6 (S.D.N.Y. Sept. 1, 2023) (quoting *Chan v. Gantner*, 464 F.3d 289, 291 (2d Cir. 2006)).  "Nevertheless, although USCIS 'is allowed to make the initial decision on a naturalization application, the district court has the final word and does not defer to any of the [USCIS's] findings or conclusions.'"  *Id.* (quoting *Chan*, 464 F.3d at 291).

"[T]he district court may rely on both the administrative record and facts established in the district court.'"  *Id.* (citations and quotation marks omitted).  "The burden remains on the 'applicant to show his eligibility for citizenship in every respect,' and 'doubts "should be resolved in favor of the United States and against the claimant."'"  *Id.* (quoting *Berenyi v. District Director*, 385 U.S. 630, 637 (1967)); *see also United States v. Macintosh*, 283 U.S. 605, 626 (1931).

### 1. *Request for a Hearing*

Section 1421(c) states that "the court shall . . . at the request of the petitioner, conduct a hearing de novo on the application."  8 U.S.C. § 1421(c).  The Second Circuit has stated,

12

however, that "[a]bsent some otherwise expressed Congressional intent, the mere use of the word 'hearing' in a statute does not mandate an evidentiary hearing be held." *Chan*, 464 F.3d at 296 (citing *J.D. ex. rel. J.D. v. Pawlet Sch. Dist.*, 224 F.3d 60, 68 (2d Cir. 2000)).  The Second Circuit has, therefore, affirmed a district court's grant of summary judgment in USCIS' favor without the holding of a bench trial or evidentiary hearing.  *See id.*; *see also Rahman*, 791 F. Supp. 3d at 363 ("[T]he Federal Rules of Civil Procedure 'apply to proceedings for admission to citizenship,' . . . and therefore 'a court need not conduct an evidentiary hearing' in cases where 'there are no disputed issues of material fact'") (quoting FED. R. CIV. P. 81(a)(3); *Del Orbe v. Holder*, 12-CV-1057, 2012 WL 3826182, *2 (S.D.N.Y. Aug. 27, 2012)).

Here, although Petitioner requests a "hearing" in his complaint, the Court finds that, based on the facts set forth in the complaint and the USCIS decisions attached thereto, Plaintiff has failed to state a claim for relief and a hearing would be futile.

### 2. Merits of Naturalization Application

"'The general naturalization statute, 8 U.S.C. § 1427, sets forth various conditions with which an individual must comply in order to be eligible for naturalization.'"  *Saleh*, 2023 WL 5671149, at *4 (quoting *Boatswain v. Gonzales*, 414 F.3d 413, 416 (2d Cir. 2005)).  "[A]pplicants must first be 'lawfully admitted for permanent residence,' and they then must maintain continuous residence within the United States (1) for at least five years immediately preceding the date of the naturalization application and (2) during the interval between the application and admission for citizenship." *Id.* (quoting 8 U.S.C. § 1427(a)).  "Where the applicant is the spouse of a U.S. citizen, 'and during the three years immediately preceding the date of filing his application [the applicant] has been living in marital union with the citizen spouse,' the requirement is shortened to three years of continuous residence." *Id.* (quoting 8 U.S.C. § 1430(a)).  However, during the

"five years immediately preceding the date of the naturalization application," the applicant must "ha[ve] been and still [be] a person of good moral character." 8 U.S.C. § 1427(a)(3).

Good moral character is defined by the INA. The statute states, in part, as follows:

> No person shall be regarded as, or found to be, a person of good moral character who . . . during such period has been confined, as a result of conviction, to a penal institution for an aggregate period of one hundred and eighty days or more, regardless of whether the offense, or offenses, for which he has been confined were committed within or without such period[.]

8 U.S.C. § 1101(f)(7); *see also Rivera v. U.S. Citizenship & Immigr. Servs.*, 5 F. Supp. 3d 439, 442 (S.D.N.Y. 2014) ("An applicant is also precluded from establishing good moral character if, during the relevant statutory period, he has been incarcerated for 180 days or more as a result of a criminal conviction").

Here, Petitioner raises a textualist argument concerning application of the 180-day-confinement rule which prohibits a finding of good moral character. He argues that because his confinement preceded his conviction, then it was not "as a result of conviction[.]" 8 U.S.C. § 1101(f)(7); *see also* Dkt. Nos. 1, 31.

Recently, the Third Circuit, relying on decisions from the Ninth and Tenth Circuits, has held that "§ 1101(f)(7) is best understood to include the period of a defendant's pre-conviction confinement if it is later credited toward his sentence." *Aguilar v. Att'y Gen. United States*, 107 F.4th 164, 170 (3d Cir. 2024). The Third Circuit explained that "[a]s both the Ninth and Tenth Circuits reasoned, crediting the time spent in detention against the term of imprisonment imposed after conviction now is a 'uniform practice.'" *Id.* (quoting *Arreguin-Moreno v. Mukasey*, 511 F.3d 1229, 1232 (9th Cir. 2008)); *see also Garcia-Mendoza v. Holder*, 753 F.3d 1165, 1170-71 (10th Cir. 2014). Relying on a Second Circuit case, which addressed a different provision of the INA,

the Third Circuit noted that "'[t]he federal government, fifty states, and the District of Columbia provide by statute, rule, or court decision that time spent by a defendant in pre-conviction detention is to be treated as a day-for-day credit or reduction of the term of imprisonment imposed upon conviction.'" *Id.* (quoting *Spina v. Dep't of Homeland Sec.*, 470 F.3d 116, 127 (2d Cir. 2006)).

The Third Circuit stated, "[t]he reason defendants 'will ordinarily earn time-served credit for any period of presentencing detention' is that 'postconviction incarceration is considered punishment for the offense.'" *Id.* (quoting *Betterman v. Montana*, 578 U.S. 437, 447 n.9 (2016)). "So when a defendant spends time in custody in connection with the crime for which he is later convicted, and that pre-conviction confinement is credited toward his ultimate sentence, his detention effectively becomes part of the term of imprisonment imposed by the judgment." *Id.* Therefore, the Third Circuit concluded that "[f]or practical purposes, [the petitioner's pre-conviction] confinement thus is 'a result of conviction' under § 1101(f)(7)." *Id.*

As noted, the Second Circuit has considered a similar issue. The Second Circuit was tasked with answering whether the Immigration and Naturalization Service erred in "deeming [a petitioner] ineligible for discretionary relief from deportation pursuant to § 212(c) . . . on the ground that he had served a term of imprisonment of at least five years" because the "time he spent in pre-conviction detention was not 'served' as part of the 'term of imprisonment' imposed upon conviction . . . ." *Spina*, 470 F.3d at 119. The Second Circuit stated that "when courts sentence defendants in pre-conviction detention to 'time served,' it is generally understood that the pre-conviction custody thereby becomes the term of imprisonment imposed by the judgment." *Id.* at 128 (collecting cases). Therefore, the Second Circuit concluded as follows:

15

> [W]hen, as in this case, a defendant is credited with time served in pre-conviction detention, thereby reducing on a day-for-day basis the remaining time he will have to serve on his term of imprisonment, that pre-conviction detention is plainly understood to be part of the term of imprisonment "served" for the felony crime of conviction, regardless of whether the result is to make the defendant eligible for earlier release from confinement or ineligible for discretionary relief pursuant to INA § 212(c).

*Id.* at 129.

In making its determination, the Second Circuit referenced § 1101(f)(7) in a footnote. *See id.* at 125, n.7. The Second Circuit noted that "[t]he government invites us to defer to the BIA's conclusion that, in the context of another provision of immigration law, INA § 101(f)(7), 8 U.S.C. § 1101(f)(7), pre-conviction detention constitutes service of the term of imprisonment." *Id.* (citing *Matter of Valdovinos*, 18 I. & N. Dec. 343 (BIA 1982)). The Second Circuit declined to consider the Government's argument because it "conclude[d] that, when time spent in pre-conviction detention is credited against or used to reduce a term of imprisonment, that detention is plainly and commonly understood to qualify as part of the time 'served on the term of imprisonment' for the felony crime of conviction. 8 U.S.C. § 1182(c)." *Id.*

The Seventh Circuit has concluded the same. *See Moreno-Cebrero v. Gonzales*, 485 F.3d 395, 400 (7th Cir. 2007). In addressing the same language from § 212(c) which was considered by the Second Circuit, the Seventh Circuit explained that it had "no reason to think that it mattered to Congress whether the person served time before conviction or after: it is the overall service of a term of imprisonment that reflects the seriousness of the crime and the culpability of the alien." *Id.* The Seventh Circuit noted that "[f]or example, INA § 101(f)(7), 8 U.S.C. § 1101(f)(7), excludes from the definition of someone with 'good moral character' any person 'who during [the preceding five years] has been confined, as a result of conviction, to a penal institution

16

for an aggregate period of 180 days or more.'" *Id.* It explained that "[i]n computing the period of time for purposes of this section, the BIA has held that confinement prior to conviction should be included." *Id.* (citation omitted).

Accordingly, based on the Second Circuit as well as other circuit courts' understanding "that pre-conviction detention is . . . to be part of the term of imprisonment" *Spina*, 470 F.3d at 129, for purposes of calculating one's length of incarceration under the INA, the Court concludes that Petitioner's time served before his conviction constitutes confinement "as a result of conviction[.]" 8 U.S.C. § 1101(f)(7).

Petitioner does not dispute USCIS's finding that he was "held in confinement for 2 years and 28 days" related to his conviction for two counts of criminal possession of a weapon in the fourth degree. Dkt. No. 1-1 at 4. Because that confinement is more than 180 days and those 180 days occurred within the five years of his application for naturalization, his application must be denied. *See* 8 U.S.C. §§ 1101, 1427; *cf. Chan*, 464 F.3d at 296 (describing the provisions in § 1101(f) as "statutory bar[s]" to establishing the good moral character requirement).

This conclusion does raise some practical concerns, however. For example, what if a defendant is incarcerated for years, but goes to trial and is found not guilty? What if a defendant is ultimately sentenced to a term of imprisonment less than the time they spent being incarcerated before they were convicted? The Third Circuit, in *Aguilar*, discussed such concerns.

The Third Circuit agreed there is "[n]o doubt an individual's confinement would be 'a result of his inability to post bail' rather than 'a result of conviction' if his pretrial detention were not credited as time served in the judgment of conviction." *Aguilar*, 107 F.4th at 171 (citing *Troncoso-Oviedo v. Garland*, 43 F.4th 936, 941 (9th Cir. 2022)). "In that context, casting pretrial detention as confinement under § 1101(f)(7) indeed would 'unduly discriminate[ ] against those

17

too poor to muster sufficient funds for bail.'" *Id.* (citation omitted). Likewise, "if a defendant's conviction were vacated, any period of pretrial confinement in connection with it logically would not preclude a finding of good moral character." *Id.* "And, if a defendant's pretrial detention exceeds the sentence ultimately imposed, only the latter would count as confinement under the statute." *Id.* "For instance, a defendant who spent 200 days in pretrial detention and is sentenced to 170 days' imprisonment with credit for time served could still establish his good moral character." *Id.* Therefore, the Third Circuit concluded that "[t]his fact-based inquiry, which looks to the actual sentence for the conviction, alleviates any fear that defendants may be penalized for their inability to make bail." *Id.*

The Court agrees. Plaintiff alleges that, within the five years before he applied for naturalization on November 4, 2023, he was convicted and he served more than 180 days in jail for those convictions, even though the confinement came before the conviction. Plaintiff does not allege that his conviction was overturned or that he was sentenced to less time than the time he served. As such, he is ineligible to be regarded as a person of good moral character for purposes of applying for naturalization under 8 U.S.C. § 1427(a).[3] Petitioner's application for naturalization, therefore, must be denied and his complaint must be dismissed.

### IV. CONCLUSION

Upon careful consideration of the entire record in this matter, the parties' submissions and the applicable law, and for the reasons set forth herein it is hereby

---

[3] Petitioner labels his response in opposition to the motion to dismiss as a cross-motion to amend, but he does not include any additional allegations in his filing. *See* Dkt. No. 31. As such, his motion to amend is denied. Likewise, because the Court is dismissing Petitioner's complaint, his motion for default judgment is denied as moot. *See* Dkt. No. 49.

**ORDERS** the Respondents' motion to dismiss (Dkt. No. 22) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED** without prejudice for lack of subject matter jurisdiction as for the claims brought pursuant to 8 U.S.C. § 1447(e) and 5 U.S.C. § 702; and with prejudice for the claim brought pursuant to 8 U.S.C. § 1421; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that Petitioner's cross-motion to amend (Dkt. No. 31) is **DENIED**: and the Court further

**ORDERS** that Petitioner's motion for default judgment (Dkt. No. 49) is **DENIED as moot**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Dated:  March 4, 2026
            Albany, New York

Mae A. D'Agostino
U.S. District Judge